UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE WILLIAMS,

    Petitioner,

                               CASE NO. 2:07-CV-10916
v.                            JUDGE ARTHUR J. TARNOW
                               MAGISTRATE JUDGE PAUL J. KOMIVES

THOMAS G. PHILLIPS,

    Respondent.[1]
_____/

**REPORT AND RECOMMENDATION**

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.    *Procedural History*

    1.    Petitioner Bruce Williams is a state prisoner, currently confined at the Pugsley Correctional Facility in Kingsley, Michigan.

    2.    On February 19, 2004, petitioner was convicted of two counts of armed robbery, MICH. COMP. LAWS § 750.529; one count of assault with intent to rob while armed, MICH. COMP. LAWS § 750.89; and one count of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On March 5, 2004, he was sentenced to concurrent terms of 5-20 years' imprisonment on each of the robbery and assault convictions, and to a mandatory consecutive term of two years' imprisonment on the felony

---

[1] By Order entered this date, Thomas G. Phillips has been substituted in place of Linda M. Metrish as the proper respondent in this action.

firearm conviction.

3. Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claim:

> THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING DEFENDANT-APPELLANT, BRUCE WILLIAMS' MOTION FOR DIRECTED VERDICT FOR THE REASON THAT THE PROSECUTION PRESENTED INSUFFICIENT EVIDENCE REGARDING THE IDENTITY OF DEFENDANT-APPELLANT AS THE PERPETRATOR OF THE ROBBERIES AND THAT, THEREFORE, THE PROSECUTION FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT DEFENDANT-APPELLANT COMMITTED THE ALLEGED ARMED ROBBERIES OF DIHA ARAFAT AND TRACEY HILL, THE ASSAULT IN THE ATTEMPT TO ROB ARMED REBECCA O'HARA AND FELONY FIREARM.

The court of appeals found no merit to petitioner's claim, and affirmed his conviction and sentence. *See People v. Williams*, No. 254930, 2005 WL 2862005 (Mich. Ct. App. Nov. 1, 2005) (per curiam).

4. Petitioner, proceeding *pro se*, sought leave to appeal this issue to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Williams*, 474 Mich. 1071, 711 N.W.2d 326 (2006).

5. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on March 2, 2007. As grounds for the writ of habeas corpus, he raises the sufficiency of the evidence claim that he raised in the trial courts.

6. Respondent filed his answer on May 31, 2007. He contends that petitioner's claim is without merit.

B. *Factual Background Underlying Petitioner's Conviction*

Petitioner was tried in connection with the June 6, 2003, robbery of Ryan's Pizza in Detroit. Petitioner's first trial ended in a mistrial after the jury was unable to reach a verdict. The evidence adduced at petitioner's second trial was accurately summarized in the prosecutor's brief on appeal

in the Michigan Court of Appeals:

> This case arises from the robbery of Ryan's Pizza in Detroit on June 6, 2003. The manager of the store, Diha Arafat, was working that evening with Tracey Hill. A part-time employee, Rebecca O'Hara, was also present, but not working that night. 2/18, 22-23, 50-51, 72- 74, 133-135. At approximately 7:00 p.m., a man entered the building. Arafat and Hill were standing in the area behind the security glass and O'Hara was in the doorway to the back storage area. 2/18, 25-26, 77-78, 81, 135-137. Hill and O'Hara did not know the man, but Arafat recognized him as Ronald or "Dre," who frequented the pizza place and had last been there one week earlier with defendant Bruce "Ace" Williams. 2/18, 28-29, 55-57, 78, 137. Arafat nodded to Hill and Hill opened the door so the man could come behind the security glass. Dre asked for a former employee named Calvin and stated that Calvin owed him $300. Arafat told him that he had "nothing to do with it." 2/18, 26-27, 48, 77-81, 102-103, 137-139.
>
> Arafat testified that defendant then entered the store holding two handguns. After Dre opened the door so that defendant could come behind the security glass, Arafat said "Ace, stop playing." Defendant was wearing a baggy jogging suit and had a "do-rag" covering his face, but Arafat recognized him by his "body structure" and the way he walked because defendant had worked at the pizza place for six months. 2/18, 28-31, 59-60. According to Arafat, defendant came to the pizza place once or twice weekly after his employment ended. Defendant was last there the day before the robbery. He prepared food and promised to pay for it later. 2/18, 69-70.
>
> Hill testified that she too saw defendant run through the entrance with two handguns. Hill knew defendant as "Ace" and had seen him in the neighborhood. Although defendant had stopped working at Ryan's before Hill began her employment, he came to the store once or twice weekly and Arafat allowed him to prepare his own food. 2/18, 82-86, 88. According to Hill, defendant was wearing a black hooded sweatshirt and had a do-rag covering his face. Hill explained that the do-rag was "very sheer" and "really see-through, so you can really see directly right through who the person is." She said that when defendant stood straight up, she could see "everything" on his face from his upper lip down. She said that she knew that defendant was the perpetrator and recognized his build. She explained that defendant was wearing the same clothing he wore when he came to the pizza place the day before the robbery. 2/18, 85-88, 110, 123.
>
> According to Arafat and Hill, Dre responded to Arafat's remark to defendant by stating that they were not playing or joking. He then order[ed] Arafat to give them money. Defendant pointed guns at Arafat's head and took approximately $400 from Arafat's pocket. After Arafat complied with Dre's order that he open the cash register, defendant took approximately $50 from the register. 2/18, 31-34, 60, 89-90. Defendant took $200 from Hill. 2/18, 34, 90, 123. He then entered the back room. 2/18, 33, 91-92.
>
> Rebecca O'Hara had seen the first man enter the pizza place and talk to Arafat. 2/18, 137-139. He had a thin-lined beard and short hair. 2/18, 164-165. She

said that the man pulled out a gun and patted Arafat's pocket as defendant rushed through the front door and into the back of the store. 2/18, 139-140, 158-159. Although O'Hara did not know defendant's name, she recognized him because she had seen him the day before at the pizza place. He was wearing the same clothes as the prior day—black pants, a greyish-black hooded sweatshirt, and a do-rag or wave cap—except he had the do-rag hanging over his face during the robbery. 2/18, 140-145, 149, 154-157. Defendant was carrying a gun. 2/18, 143. As O'Hara eased back into the storage room, she saw Arafat pulling out his money. 2/18, 143-144. Defendant walked into the storage area a few minutes later. 2/18, 144-145. He remained silent as he touched the gun to O'Hara's head and rifled through her pockets. He took nothing because O'Hara did not have anything in her pockets. He then left. 2/18, 145-147, 161, 165-166.

Defendant and Dre pulled the phone lines from the wall before leaving the building. 2/18, 35, 62. According to Hill, defendant said that they were going to "get away" and "you can't call the police or anything like that, we'll be gone before anyone gets here." 2/18, 93, 105. After the men left, Hill ran across the street and called the police. Arafat used his cellular telephone to call the police. 2/18, 36, 94.

Officer Dean Muczynski and his partner responded to the call for assistance. Officer Muczynski interviewed Arafat, Hill, and O'Hara separately and then together to obtain a description of the robbers. 2/18, 168-172. One of the perpetrators was identified as Bruce Williams, who had the street name "Ace" and lived on Eastburn St. 2/18, 172, 173. He was described as a black male in his 20s, 6' l" tall, weighing 220 to 230 pounds, who was wearing black clothes, a hooded sweatshirt, and a face mask. 2/18, 173-174, 178. The second perpetrator was Ronald or Dre, who was described as a medium complected black male in his 20s, 5' 10" tall, 195 pounds, with a medium build and a think line moustache, goatee, and sideburns. He was wearing an all black outfit. 2/18, 174-175.

Officer Eric Kimble interviewed the witnesses and prepared written statements for Arafat and Hill. 2/18, 187-190. In Arafat's statement, he described the first robber as "Ronald or Dre, black male, 24 to 25, five-ten-plus, well-built, medium complected, line beard with goatee" who was wearing a blue baseball cap, a blue or black short-sleeve jersey, and jeans or sweats. 2/18, 200. The second perpetrator was described as Ace or Bruce, a "black male, 18 to 19, six foot, big fat guy, 220-plus" who was wearing a "black-hooded sweatshirt with front pocket, a black do-rag, gray jogging pants" and was armed with silver "auto" and a blue steel revolver. 2/18, 200-201. In Hill's statement, she described the first perpetrator as a[n] "unknown black male, early 20's, five-foot-ten, medium build, medium complected, black baseball cap, black do-rag, black hood." The second perpetrator was described as "Ace, six-foot, 250-plus, dark complected, do-rag turned around, armed with chrome .25, 38 revolver," and wearing a "black hoodie, plain with pocket." 2/18, 201. At trial, Hill maintained that the officer made a mistake when he included a black do-rag in the description of the first robber. 2/18, 125-126.

Sergeant Julius Moses also spoke to the witnesses. Armed with the first name "Bruce," street name "Ace," the man's approximate age, height and weight, and the

street on which the man once lived, Sergeant Moses went to the 9th Precinct and assembled a photo array that included a photograph of defendant. 9/18, 182-186. He then returned to the pizza place. He separated Arafat and Hill and showed them the photo array. They both selected the photograph of defendant. 9/18, 186-187.

Officer Kimble arranged for an evidence technician to come to Ryan's Pizza and dust for fingerprints. 2/18, 190-191. Sergeant Michael Carpenter took photographs and dusted for fingerprints in the cash register area. 2/19, 5-7. He discovered no usable prints. At trial, he explained that he could not lift individual prints because the register was covered with oil from people's hands. 2/19, 7, 11.

That night, Officer Kimble arranged for other officers to drive by a house where defendant possibly lived. 2/18, 193-195. Defendant, however, was not arrested until September 19, 2003. He weighed 250 pounds at the time he was taken into custody. 2/18, 195; 2/19, 3.

At trial, defendant testified that he was living on Eastburn with his parents in June of 2003 and had lived at that address when he worked for Ryan's Pizza from January or February until the end of May. 2/19, 17-19, 26. He said that Hill was not working there when his employment ended, but admitted that he had visited the pizza place once or twice since then to make his own food. 2/19, 19, 26-27. Defendant admitted that he had a friend named "Ronald" who would visit him at the pizza place and was permitted inside the food preparation area. Ronald was also friends with another employee, Calvin Carpenter, and it was possible that Calvin owed Ronald money. 2/19, 20, 27-29.

Defendant denied robbing Ryan's Pizza. 2/19, 25. He claimed that the last time he was at the pizza place was in May, and maintained that the first time he saw Hill or O'Hara was in court. 2/19, 21-22. Defendant said that he was at home with his mother on June 5, 2003. 2/19, 32. He claimed that he was at the home of a neighbor, Marcella Daniels, during the evening of June 6. He said that he was wearing basketball shorts and a T-shirt because he had just played basketball. He claimed that he arrived at Daniels' house at 6:45 p.m. and did not go home until 8:00 or 8:25. Defendant asserted that he played "Madden" football, and that his thirteen-year-old brother Gregory was there. 2/19, 22-23, 30-31. Defendant admitted that he owned black jeans, a black hooded sweatshirt, and a do-rag, but maintained that his sweatshirt did not have pockets and that he never wore a do-rag when at Ryan's Pizza. 2/19, 25, 29-30, 34.

Defendant testified that he learned about the robbery a couple of days after the fact. 2/19, 23-24. He said that one or two days later the police asked his neighbor for his full name. 2/19, 24. Defendant claimed that he then went to the 9th Precinct with his mother and stepfather and inquired whether the police were looking for him. A police officer told him that they were not. He could not name the officer, but claimed that he wrote down the officer's badge number and that the information was somewhere in his "files" at his house. 2/19, 24, 33-34. He maintained that he went about his business until he was arrested three or four months later. 2/19, 24-25. He said that he had seen Ronald once or twice since the incident and, after his release on bond, asked Ronald about whether the police were looking for him. He said that

> Ronald gave him no information so he "just left it alone at that." 2/19, 34-35.
> On February 19, 2004, the jury convicted defendant as charged. 2/19, 96-100. On March 5, 2004, the trial court sentenced defendant to terms of imprisonment of sixty months to twenty years for armed robbery and assault and two years for felony-firearm. 3/5, 16-17.

Pl.-Appellee's Br. on Appeal, in *People v. Williams*, No. 254930 (Mich. Ct. App.), at 3-8.

C.  *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

6

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts

them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.   *Analysis*

Petitioner contends that the prosecution presented insufficient evidence to prove his guilty beyond a reasonable doubt. Specifically, he contends that the identifications made by the victims were unreliable and inconsistent. The Court should conclude that petitioner is not entitled to habeas relief on his sufficiency of the evidence claim.

1.   *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence.

*See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

 2. *Analysis*

Petitioner contends that the evidence was insufficient because the victims gave unreliable and inconsistent identifications of him as the perpetrator. Petitioner specifically points to the fact that the witnesses could not see his face and made their identifications based on his clothing and body structure, and that the witnesses' descriptions of the crime and his clothing were inconsistent. The Michigan Court of Appeals rejected petitioner's claim, reasoning:

> Arafat, Hill, and O'Hara unequivocally identified defendant as one of the perpetrators of the robbery. The witnesses testified consistently that defendant, who was familiar to them and whom they knew by the street name "Ace," wore dark clothing, and that they recognized his body structure and walk. Hill and Arafat identified defendant from a photo array. The jury was entitled to accept the witnesses' identification testimony as credible notwithstanding some minor inconsistencies. The prosecution's evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that the elements of the charges against defendant were proved beyond a reasonable doubt.

*Williams*, 2005 WL 2862005, at *1 (citations omitted). The court should conclude that this determination was reasonable.

Contrary to petitioner's argument, there was nothing unreliable or inconsistent in the victims' identifications. There is no dispute that each of the witnesses was familiar with petitioner, having worked with petitioner (except for O'Hara) and having seen him often in the restaurant. All three

9

testified that they recognized petitioner by his build and his gait. *See* Trial Tr., dated 2/18/03, at 30-31, 59-60, 86-87, 142-43. All three testified that petitioner was wearing a dark, hooded sweatshirt and a black "do-rag," and that he had been wearing these items when he came into the restaurant the day prior to the robbery. *See id*. at 58-59, 110-11, 141-42. Although petitioner was wearing a covering on his face, Hill testified that the material was sheer. *See id*. at 88, 110. All of the witnesses identified petitioner to the police by name and at trial, and Hill and Arafat identified petitioner from a photographic array. Further, the witnesses' descriptions to the police consistently identified petitioner's clothing as consisting of a dark hooded sweatshirt. *See id*. at 172-74, 186-87, 200-201. The witnesses had more than sufficient information upon which to base their identifications of petitioner, and their identifications and descriptions of the events were consistent on the whole.

Although there may have been some gaps or inconsistencies in the testimony and evidence it is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996). A reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *Walker v. Russell*, 57 F.2d 472, 475-76 (6th Cir. 1995); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). "The fact that the testimony is contradictory does not mean that evidence is insufficient, only that the jury must make credibility determinations." *Government of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179

(3d Cir. 1995).

Here, all three witnesses were familiar with petitioner and consistently identified him immediately after the crime and at trial. Their testimony was broadly consistent, and the jury was entitled to credit their identifications of petitioner as one of the two robbers. Viewed in the light most favorable to the prosecution, the testimony of the victims provided ample evidence for the jury to conclude beyond a reasonable doubt that petitioner was a perpetrator of the robbery. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.   *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR

72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 11/10/08

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on November 10, 2008.
>
> s/Eddrey Butts
> Case Manager